**SHARON GILBERT TIMM, ESQ.**
**Attorney I.D. 77778**
350 South Main Street, Suite 107
Doylestown, PA 18901
(215) 489-0179

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GAYLE JOBST,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. |
| v. | : | |
| | : | |
| **WARMINSTER TOWNSHIP**, and | : | JURY TRIAL DEMANDED |
| **THE WARMINSTER TOWNSHIP** | : | |
| **PUBLIC LIBRARY,** | : | |
| Defendants. | : | |

## COMPLAINT

1.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as

amended 1991, 42 U.S.C. § 2000e, et seq. as well as the Americans with Disabilities Act

of 1990, 42 U.S.C. § 12101, et seq.  This action is also brought pursuant to the

Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 et seq., as amended 1991, as

well as Pennsylvania common law.  The amount in controversy, exclusive of interest and

costs, exceeds $150,000.

2.      Plaintiff Gayle Jobst has exhausted federal and state administrative remedies.

Plaintiff  filed her EEOC claim at Charge No. 530-2012-03190 which claim was dual

filed with the Pennsylvania Human Relations Commission (PHRC).  On March 21, 2013,

the EEOC issued a Right-to-Sue letter.[1] This suit is timely filed within ninety (90) days of receipt of said EEOC notice.

## II.    PARTIES

3.      Plaintiff Gayle Jobst is an adult female individual residing at 600 Valley Road, Apartment B-13, Warrington, PA 18976.    She is a protestant (Lutheran).

4.      Defendant Warminster Township is an employer within the meaning of the applicable legislation cited herein. Its principal place of business is 401 Gibson Avenue, Warminster, PA 18974.

5.      Defendant The Warminster Township Public Library is an employer within the meaning of the applicable legislation cited herein.  Its principal place of business is 1076 Emma Lane, Warminster, PA 18974.

## III.   FACTUAL ALLEGATIONS

6.      Plaintiff was hired as an Administrative Assistant for the Warminster Township Public Library on December 4, 2000, at a pay rate of $15.65 per hour.  She is a member of a collective bargaining unit.

7.      On December 1, 2011, Plaintiff applied for the position of Library Director (a management position paying $70,000 per year) as the current Director was retiring.

8.      Plaintiff's position in December, 2011, was Head Reference Librarian; her pay rate was $20.65 per hour.

9.      Plaintiff's husband is a protestant pastor who is disabled as of 2005.

---

[1] Plaintiff's EEOC claim was handled by the Cleveland Office.  According to 29 CFR § 1601 et seq., the Department of Justice must issue a Right-to-Sue letter for those discrimination claims brought against state and local governments.  It is unclear why the EEOC issued this Right-to-Sue letter and not the Justice Department.

10.     In or around the fall of 2010, a dispute arose as to whether Plaintiff was a Township employee or a Library employee.

11.     Plaintiff questioned this dispute as she was entitled to receive benefits as a Township employee (healthcare and pension).

12.     Because of Plaintiff's questioning the basis of the dispute as to who was her employer, in order to receive healthcare benefits, Plaintiff had to provide detailed personal information about her husband's health condition.

13.     In August, 2005, Terry Jobst (Plaintiff's husband) was in a serious automobile accident.  His vehicle was struck by a semi-truck and trailer (18-wheeler).  Terry Jobst suffered a broken neck at C-4-5-6 and was placed in a halo brace.  Over the next four years, Terry had spinal cord injections and multiple surgeries.  As a result of this accident, Terry spent two years in and out of Einstein Moss Brain Trauma centers and rehab hospitals in Pennsylvania and an additional two years in outpatient hospitals and nursing homes in Iowa (his home state).  Terry still has assisted breathing by the use of Bi-pap respirator.  Terry has difficulty transitioning from sitting to standing, to walking and difficulty breathing.  Terry uses a power wheelchair and other medical devices to aid his mobility and caregivers.  Terry is substantially impaired in the major life activities of breathing, sitting, standing, and walking and has a record of being substantially impaired in those major life activities.

14.     On February 1, 2012, Plaintiff received a letter that she would not be promoted to the Director position of the Library, nor would she be appointed Interim Director despite her acting as the Interim Director since the former Director retired.

15.     The February 1, 2012, letter was written by the Library's Board of Trustees:
Doug Mondel, Mary Jane Courtright, and Cynthia Jones.

16.     The Library's Board of Trustees hired Margaret Lindner as the Library Director
on or about February 22, 2012.  Ms. Lindner has never worked for the library before
February, 2012.

17.     Lindner was instructed by Plaintiff how to do all aspects of all library jobs, as
Lindner had no personal experience as a circulation clerk or reference librarian.  More
than one year after her hire, Lindner still needs training from Plaintiff.

18.     Lindner does not know how to fill in paperwork or apply online in order to
receive grants (federal e-rate telecommunications discount) for the Library; she has made
it Plaintiff's responsibility despite the fact Plaintiff is not the Director.

19.     Lindner does not have the five years mandated prior library supervisory
experience necessary to meet the minimum requirements of the Commonwealth of
Pennsylvania Excellence in Library procedural manual.

20.     Prior to being hired by the Township, Lindner was the head of the bookmobile
program for Montgomery County.

21.     Lindner has admitted to Plaintiff that when Plaintiff is not at work in the Library,
work does not get done as Lindner does not know how to get her tasks done without
Plaintiff's help.

22.     On August 27, 2012, Terry Jobst had a conversation with Doug Mondel, Board
Member, Warminster Township, at his home.  Terry went to his home to find out why
Mondel had failed to appear at the Warminster District courts that day.  Doug had been
Terry's friend of the last 13 years as a board member and is now Board Chairman of the

4

Warminster Township Free Library. Terry and Mondel sat on the front porch of Mondel's Ivyland home. Terry was dressed in his black suit and clergy clerical.

23.     Mondel told Terry that consultant Neil Modell who wanted to submit the winning bid for the Township of Warminster uniform and non-uniform lucrative healthcare contract, said he could save the Township a lot of money. It was 2010 Township of Warminster Supervisor Ellen Jarvis who recommended Neil Modell and his firm be awarded the heathcare contract for the Township.

24.     Mondel continued to tell Terry Mary Jane Courtright, a Library board member and a member of the search committee, knew that Gayle Jobst would probably apply for the Director of Library position, but would ensure that Gayle Jobst would never be hired because her husband is a troublemaker, and a huge drain on Library resources due to his medical costs. Courtright, Township Manager, Robert Tate, and Interim Director Richard Manfredi said they would take care of the hiring for the Library Director position.

25.     Mondel went on to explain to Terry that under the new Obama healthcare regulations, the Township of Warminster Supervisors must terminate union employees to reach the magic number of 49 employees whereby the Township then does not have to participate fully in "The Patient Protection and Affordable Care Act".

26.     During this frank conversation, Mondel told Terry, "you are a priest and you cannot repeat my confession to you." Terry told Mondel as Mondel was not a Lutheran, and his confession was not to his rabbi (Mr. Mondel is Jewish), then his statements were made to Terry as a citizen and not covered by priest-penitent privilege.

27.     Mondel told Terry that "Catholics and Jews run this County, and you [me] and I cannot fight city hall". Mondel also stated, "what the Township Manager and solicitors were afraid of is that Gayle would file an EEOC claim. But we delayed her union grievance and the new union contract long enough to run out her timely filing." Terry then informed Mondel that Plaintiff had in fact filed an EEOC claim, and that it was likely he would have to testify and decide whether he would do the right thing by coming forward.

28.     Mondel then stated, "Pastor Jobst you are like Adolf Hitler. Hitler was a Lutheran, and he persecuted the Jews. You've had a vendetta since the right to know request. Hitler did one thing right, he said the disabled should be euthanized. Pastor, some board members feel you should have died when we cut off your medications the past two years. You shifted your medical bills onto the township. Now you tell me you're going to use my honest confession against me, and ask for your medical reimbursement and legal costs, according to Paul Aldinger from Grace Lutheran Church, from the township. The Chairman of your former congregation, Paul Aldinger, informed the library board members that in 2005 Terry had "purposely switched" his medical insurance coverage costs from his congregation to his wife's medical coverage, and thus the taxpayers of Warminster."

29.     Mondel continued, "You're a goddamn Jew hater, get the fuck off my property."

30.     Mondel and Terry also discussed that Terry's medical bills are the township's single largest healthcare expense.

## COUNT I

## PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12101, et seq.

31.     Allegations contained in paragraphs 1 through 30 above are incorporated herein by reference as if set forth in full.

32.     An employer is prohibited from "excluding or otherwise denying equal jobs or benefits to" an individual based upon the individual's relationship or association with a disabled person, 42 U.S.C. § 12112(b)(4).

33.     Plaintiff was qualified for the position of Director at the time of application for the position, Plaintiff was denied the management position, Plaintiff's association with her husband is well-known by Defendants, and by Mondel's own admission Plaintiff was not offered the position due to her association and relationship with her husband, a disabled person.

34.     Defendants' unlawful and discriminatory acts have caused Plaintiff to suffer severe emotional distress, wage loss, monetary loss, personal humiliation, loss of self-esteem, mental anguish, sleeplessness, loss of pride in career, exacerbation of her medical ailments, irritability, withdrawal from her social life, anxiety, stress, and embarrassment.

        WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) for back pay, front pay, compensatory damages, interest, costs, attorney's fees, and such other legal and injunctive relief as this Court may deem just, proper, and appropriate under the circumstances of this case.

## COUNT II

**PLAINTIFF'S CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF
1964, 42 U.S.C. § 2000e, et seq.**

35.     Allegations contained in paragraphs 1 through 34 above are incorporated by
reference herein as if set forth in full.

36.     Plaintiff was qualified for the position of Director at the time of application for
the position, Plaintiff is a member of a statutorily protected class (she is Lutheran) ; she
was denied the management position, (42 U.S.C. § 2000e-2(a)(1); and her employer's
actions were taken under circumstances giving rise to an inference of religion-based
discrimination given the admissions by Mondel who clearly made reference to Plaintiff's
religion (Lutheran).

37.     Defendants' unlawful and discriminatory acts have caused Plaintiff to suffer
severe emotional distress, wage loss, monetary loss, personal humiliation, loss of self-
esteem, mental anguish, sleeplessness, loss of pride in career, exacerbation of her medical
ailments, irritability, withdrawal from her social life, anxiety, stress, and embarrassment.

        WHEREFORE, Plaintiff demands judgment in her favor and against Defendants
in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) for back pay,
front pay, compensatory damages, interest, costs, attorney's fees, and such other legal
and injunctive relief as this Court may deem just, proper, and appropriate under the
circumstances of this case.

Date:   June 20, 2013                          _Sharon Gilbert Timm_
                                               Sharon Gilbert Timm, Esquire
                                               Attorney for Plaintiff

8